UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KUMHO TIRE (VIETNAM) CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC <br><br> Defendant-Intervenor. | Court No. 21-00397 |

COMMENTS OF
KUMHO TIRE (VIETNAM) CO., LTD.
ON COMMERCE'S REMAND REDETERMINATION

PUBLIC DOCUMENT

WINTON & CHAPMAN PLLC
1100 13th Street, N.W., Suite 825
Washington, D.C. 20005
(202) 774-5500

Attorneys for Kumho Tire (Vietnam) Co., Ltd.

February 14, 2025

Table of Contents

Page

ARGUMENT .................................................................................................................... 2

    A.    Commerce's Finding that the Vietnamese Traded-Goods Sector Was the "Predominant User" of the Allegedly Undervalued Exchange Rate Is Not Consistent with the Statutory Requirements ............................................... 2

    B.    Commerce's Suggestion that Vietnamese Authorities Sought To Depreciate the Dong to Boost Demand for Vietnamese Consumer Goods Is Not Supported by Substantial Evidence................................................... 5

CONCLUSION .................................................................................................................. 7

Table of Authorities

Page

COURT DECISIONS

*Hibbs v. Winn*,
    542 U.S. 88 (2004) ................................................................................................... 4

*Kumho Tire (Vietnam) Co., Ltd. v. United States*,
    Slip Op. 24-115 (Ct. Int'l Trade October 18, 2024) .............................................. 2

*Hyundai Steel Company v. United States*,
    Slip Op. 24-135 (Ct. Int'l Trade December 12, 2024) .......................................... 5

STATUTES

19 U.S.C. § 1677(5A)(D)(iii). ........................................................................................ 4

ADMINISTRATIVE MATERIALS

Uruguay Round Agreements Act, Statement of Administrative Action (SAA),
    H.R. Rep. No. 103–316, vol. 1, (1994)
    *reprinted in* 1994 U.S.C.C.A.N. 4040 ................................................................. 2

OTHER AUTHORITIES

Report to Congress: Macroeconomic and Foreign Exchange Policies
    of Major Trading Partners of the United States, January 2020. ..................... 6, 7

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KUMHO TIRE (VIETNAM) CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant,<br><br>and<br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC<br><br>Defendant-Intervenor. | Court No. 21-00397 |

COMMENTS OF
KUMHO TIRE (VIETNAM) CO., LTD.
ON COMMERCE'S REMAND REDETERMINATION

This brief is submitted on behalf of Kumho Tire (Vietnam) Co., Ltd. ("KTV") to comment on the redetermination on remand (the "Redetermination") submitted to the Court by the Department of Commerce on January 15, 2025, concerning the countervailing duty investigation of Passenger Vehicle and Light Truck ("PVLT") Tires from Vietnam. For the reasons set forth below, the Court should find that Commerce's Redetermination is not in accordance with law or supported by substantial evidence on the record.

ARGUMENT

A. *Commerce's Finding that the Vietnamese Traded-Goods Sector Was the "Predominant User" of the Allegedly Undervalued Exchange Rate Is Not Consistent with the Statutory Requirements*

Under the countervailing duty statute, a program can constitute a countervailable subsidy only when the program in question is "specific" either as a matter of law or as a matter of fact. The Statement of Administrative Action to the Uruguay Round Amendments clarifies that Subsidies are specific when they are "narrowly focused" and "provided to or used by discrete segments of an economy."[1] By contrast, "government assistance that is both generally available and widely and evenly distributed throughout the jurisdiction of the subsidizing authority is not an actionable subsidy."[2] And, "where the number of users of a subsidy is very large, the predominant use and disproportionality factors would have to be assessed."[3]

In its October 18 decision, the Court instructed Commerce on remand to "specify whether Commerce made the assumption in its specificity determination that the use of the currency undervaluation subsidy is spread evenly in the traded goods sector."[4] In its Redetermination, Commerce explained that it considered the Court's question to be irrelevant. As Commerce explained,

---

[1] Uruguay Round Agreements Act, Statement of Administrative Action (SAA), H.R. Rep. No. 103–316, vol. 1, at 930 (1994) *reprinted in* 1994 U.S.C.C.A.N. 4040, 4242.

[2] *Id* at 913.

[3] *Id* at 931.

[4] *Kumho Tire (Vietnam) Co., Ltd. v. United States*, Slip Op. 24-115 (Ct. Int'l Trade October 18, 2024) at 136.

> With due respect to the Court's inquiry, we do not find this question relevant under section 771(5A)(D) of the Act. A "group" within the meaning of section 771(5A)(D) of the Act is a unitary whole, similar to an "industry" or "enterprise." The question under section 771(5A)(D) of the Act is not whether the subsidy is distributed or used evenly within the beneficiary group or industry or even enterprise, but rather whether it is distributed or used evenly among different groups or industries or enterprises. For example, if the question is whether the steel industry is a predominant user, or receives a disproportionately large amount of, a subsidy, it does not matter whether the subsidy is distributed evenly within the steel industry. Rather, what matters is whether the steel industry receives a predominant or disproportionate share compared to other industries. The same principle holds true for a "group." The issue is not the distribution of the subsidy within the group, but rather the distribution of the subsidy compared to other groups.[5]

Instead of addressing the Court's concern, Commerce's Redetermination instead chose to address a different issue:

> Perhaps KTV's real complaint is that a "group" composed of Vietnamese exporters is too large compared to the Vietnamese economy as a whole. Yet the Court affirmed Commerce's finding that exporters can constitute a "group" within the meaning of section 771(5A)(D) of the Act. Further, Commerce found, and the Court agreed, that the Vietnamese economy is diversified such that a de facto specificity finding was not due merely to lack of economic diversification. *In any event, as Commerce explained in the Final Determination, when nearly 72 percent of a subsidy benefits one particular group it the economy, "it cannot be said that the subsidy is widely used throughout the economy."*[6]

The Redetermination's attempt to shift the subject is, however, improper. It simply is not Commerce's role to rewrite the Court's remand instructions. Commerce's failure to address the issue raised by the Court's decision, by itself, requires a further remand.

---

[5] Commerce's January 15 Final Results of Redetermination Pursuant to Court Remand at 19 (emphasis added, footnotes omitted) (hereinafter "Redetermination") (Public Remand Record ("PRR")-6).

[6] *Id.* (PRR-6).

Furthermore, the logic adopted by the Redetermination for rejecting what it characterized as "KTV's real complaint" is also without merit. According to the Redetermination, the alleged currency undervaluation was *de facto* specific simply because the "group" identified by Commerce was responsible for 72 percent of the conversions of U.S. dollars (USD) into Vietnamese dong (VND). In Commerce's view, such a high percentage meant that the "group" encompassing the entire traded-goods sector was the "predominant user" of the alleged currency-undervaluation program.[7]

The Redetermination's interpretation would, however, render the statutory provisions concerning identification of *de facto* specificity meaningless.[8] It is always possible to

---

[7] *Id.* at 20 (PRR-6).

[8] *See e.g.*, *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) ("A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant....").

  As the Court is aware, the statute provides the following instructions regarding the determination whether a subsidy is *de facto* specific:

> Where there are reasons to believe that a subsidy may be specific as a matter of fact, the subsidy is specific if one or more of the following factors exist:
>
> (I)   The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.
>
> (II)  An enterprise or industry is a predominant user of the subsidy.
>
> (III) An enterprise or industry receives a disproportionately large amount of the subsidy.
>
> (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others....
>
> For purposes of this paragraph ... any reference to an enterprise or industry is a reference to a foreign enterprise or foreign industry and includes a group of such enterprises or industries.

19 U.S.C. § 1677(5A)(D)(iii).

define a "group" of industries in a manner that will find the group to be the predominant user of a subsidy program. For example, if the steel industry (to use the Redetermination's example) is not by itself the "predominant user" of a subsidy program, Commerce could keep adding other industries to its "group" until the total usage by all members of the group totaled more than 50 percent of total usage. It might require Commerce to include all manufacturing industries, or all industries producing traded goods, or even all manufacturing and service industries other than, say, legal services. But, as long as the "group" is defined broadly enough, there is always some definition for which the "group" would be the predominant user.

This Court has previously held that Commerce cannot use its discretion to define "groups" so broadly as to render meaningless the statutory language concerning "disproportionate" use of a subsidy program.[9] The same logic applies when, as in this case, Commerce purports to define a "group" so broadly that the group is a majority user of the subsidy program. In order to give meaning to the statutory language, a finding of "predominant use" must consider whether the "predominance" arises from a discriminatory preference for one enterprise or industry over another rather than from the sheer size of the group. The Court should remand this case once more with instructions for Commerce to address that issue.

B. *Commerce's Suggestion that Vietnamese Authorities Sought To Depreciate the Dong to Boost Demand for Vietnamese Consumer Goods Is Not Supported by Substantial Evidence*

According to the Treasury, the Government of Vietnam (GOV) has consistently managed the value of the VND to align with other currencies for a long period of time. In

---

[9] *See Hyundai Steel Company v. United States*, Slip Op. 24-135 (Ct. Int'l Trade December 12, 2024) at 5.

- 5 -

its January 2020 report, which assessed policies through mid-2019, Treasury noted that Vietnam's authorities tightly control the dong's value and that, since January 2016, the State Bank of Vietnam (SBV) has allowed the dong to fluctuate within a ±3 percent trading band against a currency basket, adjusting the reference rate daily.[10]  There is no evidence to suggest that the GOV abandoned its responsible management of the VND during the review period, even if market conditions necessitated increased foreign exchange purchases in late 2019.

However, in its Redetermination, Commerce alleged that the GOV managed the VND relative to the U.S. dollar in late 2019 to gain a competitive advantage for Vietnamese exports.[11]  Commerce asserted that the increase in net foreign reserve purchases during this period was likely an effort to depreciate the VND against the USD, making Vietnamese goods cheaper in U.S. markets.[12]

This allegation is not supported by substantial evidence and is contradicted by the record.  Notably, Commerce acknowledged in the Redetermination that the GOV intervened in currency markets during the second half of 2018 to support the VND's value amid downward pressure, which would have otherwise made Vietnamese products cheaper in the United States.  According to the January 2020 Treasury report, Vietnamese authorities sold foreign exchange in the latter half of 2018 due to financial turbulence in emerging markets, which created downward pressure on many emerging market

---

[10] Report to Congress: Macroeconomic and Foreign Exchange Policies of Major Trading Partners of the United States, January 2020, at 36 (A copy of this Report was provided in Attachment 17 of KTV's September 8, 2020, Submission (Public Record ("PR")-202; Confidential Record ("CR")-76)).

[11] Redetermination, *supra* note 5 at 22 (PRR-6).

[12] *Id.* (PRR-6).

currencies, including the VND.[13]  As global financial conditions eased and holiday-related remittances rose in early 2019, the authorities transitioned to purchasing foreign exchange, with net purchases in the first half of 2019 modestly surpassing net sales over the prior six months.[14]

In other words, the GO's management of the VND during the review period was a response to market developments to stabilize the currency's value, rather than an attempt to engineer a competitive advantage for Vietnamese exports to the United States.  Therefore, there is no evidence to support the Commerce's allegation that the GOV manipulated the VND's value in late 2019 to benefit Vietnamese exporters to the United States.

CONCLUSION

For the foregoing reasons, Commerce's Redetermination cannot be sustained, and this Court should remand this matter with instructions to Commerce for disposition in a manner consistent with the judgment of this Court.

        Respectfully submitted,

        /s/Jeffrey M. Winton

        Jeffrey M. Winton
        Michael J. Chapman
        Amrietha Nellan
        Vi N. Mai

---

[13] Treasury January 2020 Report, *supra* note 10 at 37 (PR-202).

[14] *Id.* (PR-202).

                                              WINTON & CHAPMAN PLLC
                                              1100 13th Street, N.W., Suite 825
                                              Washington, D.C.  20005
                                              (202) 774-5500

                                              Attorneys for Kumho Tire (Vietnam) Co., Ltd.

February 14, 2025

<u>Certificate of Compliance</u>

      Pursuant to the Court's "Standard Chambers Procedures," I, Jeffrey M. Winton, hereby certify that the word count function of the word-processing system used to prepare the foregoing brief indicates that the brief contains 1,732 words including headings, footnotes, and quotations, but not including the cover, caption, table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature block.

                                                         <u>/s/Jeffrey M. Winton</u>

February 14, 2025