# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KUMHO TIRE (VIETNAM) CO., LTD., ) <br> ) <br>           Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br>           Defendant, ) <br> ) <br>      and ) <br> ) <br> UNITED STEEL, PAPER AND FORESTRY, ) <br> RUBBER, MANUFACTURING, ENERGY, ) <br> ALLIED INDUSTRIAL AND SERVICE ) <br> WORKERS INTERNATIONAL UNION, ) <br> AFL-CIO, CLC MANUFACTURING, ) <br> ) <br>           Defendant-Intervenors. ) <br> ) | Court No. 21-00397 |

## DEFENDANT'S RESPONSE TO PLAINTIFF'S COMMENTS ON REMAND REDETERMINATION

|  |  |
|---|---|
|  | YAAKOV M. ROTH <br> Acting Assistant Attorney General |
|  | PATRICIA M. MCCARTHY <br> Director |
| OF COUNSEL: <br> Paul Thornton <br> Attorney <br> U.S. Department of Commerce <br> Office of the Chief Counsel For Trade <br> Enforcement and Compliance <br> 1401 Constitution Avenue, NW <br> Washington, D.C. 20230 <br> Tel: (202) 329-3409 <br> Email: paul.thornton@trade.gov <br> Fax: (202) 514-8624 | SOSUN BAE <br> Senior Trial Counsel <br> U.S. Department of Justice <br> Civil Division <br> Commercial Litigation Branch <br> P.O. Box 480 <br> Ben Franklin Station <br> Washington D.C. 20044 <br> Tel: (202) 305-7568 <br> Email: sosun.bae@usdoj.gov |
| March 10, 2025 | Attorneys for Defendant |

**TABLE OF CONTENTS**

**PAGE**

BACKGROUND ............................................................................................................................2

ARGUMENT .................................................................................................................................. 5

    I.       Standard Of Review ................................................................................................ 5

    II.      Commerce Reasonably Explained Its Finding That The Traded Goods Sector Was The Predominant User Of The Currency Undervaluation Program ...................... 6

            A.       Commerce Complied With The Remand Order......................................... 6

            B.       KTV Fails To Undermine Commerce's Finding That The Traded Goods Sector Was The Predominant User Of The Subsidy ...................... 6

    III.     Commerce Reasonably Explained The Discrepancy Between The Two Treasury Reports................................................................................................... 8

CONCLUSION.............................................................................................................................10

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Bethlehem Steel Corp. v. United States*,
  223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ...................................................................................5

*Consolo v. Fed. Mar. Comm'n*,
  383 U.S. 607 (1966) ..........................................................................................................................5

*Fujitsu Gen. Ltd. v. United States*,
  88 F.3d 1034 (Fed. Cir. 1996) .........................................................................................................5

*Kumho Tire v. United States*,
  No. 23-00397, Slip Op. 24-115 (Ct. Int'l Trade Oct. 18, 2024) ...................................................1

*PAM, S.p.A. v. United States*,
  582 F.3d 1336 (Fed. Cir. 2009) ......................................................................................................5

**STATUTES**

19 U.S.C. § 1516a(b)(1)(B)(i) .............................................................................................................5

19 U.S.C. § 1677(5A)(D) ............................................................................................................passim

19 U.S.C. § 1677(5A)(D)(iii) ..............................................................................................................7

**REGULATIONS**

19 C.F.R. § 351.528 ............................................................................................................................2

19 C.F.R. § 351.528(a)(2) ...................................................................................................................9

**OTHER AUTHORITIES**

*Passenger Vehicle and Light Truck Tires from the Socialist Republic of Vietnam*,
  86 Fed. Reg. 28,566 (Dep't of Commerce May 27, 2021) ........................................................2

*Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam*,
  85 Fed. Reg. 71,607 (Dep't of Commerce Nov. 10, 2020) ........................................................2

*Passenger Vehicle and Light Truck Tires from the Socialist Republic of Vietnam: Initiation of Countervailing Duty Investigation*,
  85 Fed. Reg. 38,850 (Dep't of Commerce June 29, 2020) ........................................................2

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

|  |  |
|---|---|
| KUMHO TIRE (VIETNAM) CO., LTD., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 21-00397 |
| ) | |
| UNITED STATES, ) | |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| UNITED STEEL, PAPER AND FORESTRY, ) | |
| RUBBER, MANUFACTURING, ENERGY, ) | |
| ALLIED INDUSTRIAL AND SERVICE ) | |
| WORKERS INTERNATIONAL UNION, ) | |
| AFL-CIO, CLC MANUFACTURING, ) | |
| ) | |
| Defendant-Intervenors. ) | |

### DEFENDANT'S RESPONSE TO
### PLAINTIFF'S COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments submitted by plaintiff Kumho Tire (Vietnam) Co., Ltd. (KTV) (ECF No. 95), concerning the Department of Commerce's (Commerce) remand redetermination. *See* January 15, 2025 Remand Results, ECF No. 91; KTV Remand Comments, ECF No. 95. Commerce's remand redetermination complies with this Court's remand order, is supported by substantial evidence, and accords with law. *See Kumho Tire v. United States*, No. 23-00397, Slip Op. 24-115 (Ct. Int'l Trade Oct. 18, 2024), ECF No. 78 (Remand Order). Accordingly, we respectfully request that the Court sustain the remand redetermination and enter judgment for the United States.

**BACKGROUND**

On June 29, 2020, Commerce published the notice of initiation of a countervailing duty investigation covering passenger vehicle and light truck tires (passenger tires) from the Socialist Republic of Vietnam (Vietnam). *See Passenger Vehicle and Light Truck Tires from the Socialist Republic of Vietnam: Initiation of Countervailing Duty Investigation*, 85 Fed. Reg. 38,850 (Dep't of Commerce June 29, 2020) (P.R. 92).[1] Commerce selected KTV as a mandatory respondent. *See* July 8, 2020 Respondent Selection Memorandum (P.R. 97, C.R. 24).

On November 10, 2020, Commerce published its preliminary determination. *See Passenger Vehicle and Light Truck Tires From the Socialist Republic of Vietnam*, 85 Fed. Reg. 71,607 (Dep't of Commerce Nov. 10, 2020) (P.R. 295), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 296). In its preliminary determination, Commerce found that enterprises that buy or sell goods internationally are the predominant users of the Government of Vietnam's (GOV) currency undervaluation subsidy; thus, Commerce found the program to be *de facto* specific under 19 U.S.C. § 1677(5A)(D). PDM at 23-24. Commerce further determined that, pursuant to 19 C.F.R. § 351.528, a benefit was provided based on the degree of undervaluation measured by the Department of the Treasury (Treasury). *Id.* at 24-25.

On May 27, 2021, Commerce published its final determination, in which these findings remained unchanged. *See Passenger Vehicle and Light Truck Tires from the Socialist Republic of Vietnam*, 86 Fed. Reg. 28,566 (Dep't of Commerce May 27, 2021) (P.R. 476), and accompanying Issues and Decision Memorandum (IDM) (P.R. 468).

---

[1] Public documents on the administrative record are designated as "P.R." and confidential documents are designated as "C.R." All P.R. and C.R. references in this brief cite to the administrative investigation record. References to the public documents on the administrative record for the remand redetermination are designated as "P.R.R."

KTV lodged various challenges to Commerce's final determination before this Court. *See generally* Complaint, ECF No. 15. As relevant here, KTV argued that the GOV's currency undervaluation program was not specific and did not provide a benefit to the recipient. *See* KTV Br. at 40, ECF No. 31. The Court affirmed multiple aspects of Commerce's determination that the currency undervaluation program constitutes a countervailable subsidy. *See* Remand Order at 20-135. However, the Court remanded for Commerce to further explain certain parts of its specificity analysis and to reconcile a discrepancy between two Treasury reports concerning Vietnam's foreign currency purchases. *Id.* at 136-137.

On December 27, 2024, Commerce issued a draft remand redetermination. *See* December 27, 2024 Draft Remand Redetermination (P.R.R. 1). KTV submitted a short set of comments in response to the draft remand redetermination. *See* January 3, 2025 KTV Draft Remand Comments (P.R.R. 2). Commerce issued its final remand results on January 16, 2025. *See generally* Remand Results.

In its final remand results, Commerce provided further explanation for its determination that the currency undervaluation program was *de facto* specific. *Id.* at 3-20. In doing so, Commerce addressed each of the areas identified by the Court. First, Commerce explained the statutory authority under which it relied on the available data regarding United States Dollar (USD) inflows to Vietnam. *Id.* at 6-10. Second, Commerce addressed the information it considered missing from the record and explained why the information provided by the GOV was not usable. *Id.* at 10-16. Third, Commerce provided further explanation for its "four channels" analysis.[2] *Id.* at 16-18.

---

[2] KTV does not challenge Commerce's remand results with respect to these three issues.

3

Fourth, Commerce addressed the Court's question whether Commerce had made an assumption in its specificity determination as to whether the use of the currency undervaluation is spread evenly in the traded goods sector. *Id.* at 18-20. Commerce stated that it had made no assumption as to whether the subsidy usage was spread evenly across the traded goods sector. *Id.* at 19. Commerce then explained that, pursuant to 19 U.S.C. § 1677(5A)(D), a "group" within the meaning of that section is a unitary whole, similar to an "industry" or "enterprise," and that, therefore, whether the subsidy is distributed or used evenly *within* the beneficiary group, industry, or enterprise is not relevant to Commerce's analysis. *Id.* at 18-20. Rather, the pertinent question is whether the subsidy is distributed or used evenly *among* different groups or industries or enterprises. Commerce also observed that the Court had agreed that exporters can constitute a "group" within the meaning of the statute. *Id.* Commerce continued to find that the currency undervaluation program was *de facto* specific because the traded goods sector—comprised of companies that sell goods internationally—was the predominant user of the subsidy. *Id.* at 20.

Finally, Commerce—at the Court's direction—provided further analysis regarding the discrepancy in net purchases between an August 2020 report Treasury had provided to Commerce (Treasury Report) and a January 2020 Treasury Report put on the record by KTV (KTV Treasury Report). *Id.* at 21-23; *see also* Remand Order at 118, 123, 136. Commerce first pointed out that the Treasury Report covered the entire period of investigation (*i.e.*, calendar year 2019) while the KTV Treasury Report covered the first six months of the period of investigation (*i.e.*, January-June 2019), as well as the six months preceding the period of investigation. Remand Results at 21. Commerce then explained that KTV Treasury Report demonstrated that Vietnam had increased its foreign exchange purchases in 2019 (in contrast to the second half of 2018), and that the 2018 information affected the overall numbers for the July 2018-July 2019

4

period covered in that report. *Id.* at 22 (explaining that "{i}f Treasury had only included the first six months of 2019 in its January 2020 Report to Congress, the result presumably would have been much different than the $2.1 billion net figure, which was weighed down by the 2018 data"). Commerce additionally observed that the majority of Vietnam's foreign exchange purchases during the period of investigation occurred in the second half of 2019 and would not have been reflected in the KTV Treasury Report, which only covered the first half of 2019. *Id.* Commerce explained that the increase over the second half of 2019 was likely due to the GOV's efforts to depreciate the Vietnamese dong (VND) vis-à-vis the USD during the period leading up to and including the holiday season in the United States—the largest consumer market for Vietnam's goods. *Id.* at 22-23.

## ARGUMENT

I.  Standard Of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002). Accordingly, the "court will sustain {Commerce's} determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law." *Id.* (citing 19 U.S.C. § 1516a(b)(1)(B)(i)); *see also Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996). Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *PAM, S.p.A. v. United States*, 582 F.3d 1336, 1339 (Fed. Cir. 2009). Even if the Court may draw two inconsistent conclusions from the record evidence, that possibility "does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

II.   Commerce Reasonably Explained Its Finding That The Traded Goods Sector Was The Predominant User Of The Currency Undervaluation Program

    A.   Commerce Complied With The Remand Order

KTV first asserts that Commerce, rather than complying with the Court's remand order, "rewrote" the remand instructions by explaining why it did not consider whether a subsidy is spread evenly across a group, industry, or enterprise to be relevant. KTV Remand Comments at 2-3. This is simply not true. The Court ordered Commerce to "specify whether Commerce made the assumption in its specificity determination that use of the currency undervaluation subsidy is spread evenly in the traded goods sector{.}" Remand Order at 136. Commerce squarely answered this question, stating that "we have made no assumption . . . whether the subsidy usage was spread evenly within the traded goods sector, *i.e.*, within the group of companies that sell goods internationally." Remand Results at 19. That Commerce also explained why it did find the issue relevant does not detract from the fact that Commerce complied with the Court's direction to specify whether or not it had made an assumption as to whether the subsidy usage was spread evenly.

    B.   KTV Fails To Undermine Commerce's Finding That The Traded Goods Sector Was The Predominant User Of The Subsidy

KTV does not challenge the merits of Commerce's explanation as to why Commerce did not need to consider whether the subsidy was distributed evenly within a group. But, to the extent the Court considers it, Commerce's explanation is reasonable and lawful.

To put it simply, the issue in determining if "a subsidy may be specific as a matter of fact" is not the distribution of the subsidy *within* a group, but rather the distribution of the subsidy *compared* to other groups. See 19 U.S.C. § 1677(5A)(D). As Commerce explained in its remand results, a "group" within the meaning of section (5A)(D) is a unitary whole, like an "industry" or "enterprise." Remand Results at 19. Therefore, Commerce finds the pertinent

6

question to be how a subsidy is distributed among different groups, industries, or enterprises, not whether the subsidy is distributed or used evenly within the beneficiary group.  *Id.*  For example, if the question is whether the steel industry is a predominant user or receives a disproportionately large amount of a subsidy, then what matters is whether the steel industry receives a predominant or disproportionate share compared to other industries, not whether the subsidy is distributed evenly within the steel industry.  *Id.*

KTV complains that Commerce's determination that the subsidy was *de facto* specific because 72 percent of the subsidy benefited the traded goods sector would render specificity meaningless.  KTV Comments at 4-5.  But the Court has already agreed with Commerce's determination that companies that sell goods internationally can comprise a "group," explaining that there is no limitation on the size of a "group" in the statute and that "Commerce defined the group consistent with the statute."  Remand Order at 86-87, 93-95 (citing to the Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1 (1994) at 930).

Moreover, as Commerce explained, exporters can constitute a "group" within the meaning of section(5A)(D), especially given that the Vietnamese economy is diversified such that a *de facto* specificity finding is not based merely on the lack of economic diversification.  *See* Remand Results at 19.   This finding is consistent with the statute, which expressly requires Commerce to "take into account the extent of diversification of economic activities within the jurisdiction of the authority providing the subsidy."  19 U.S.C. § 1677(5A)(D)(iii).

KTV claims that this Court has held that Commerce cannot define a group broadly in considering disproportionate use of a subsidy, and that therefore Commerce should not be allowed to define a group broadly in conducting a predominant use analysis.  KTV Comments at

7

5. But KTV cites no authority or reason for treating disproportionate use the same as predominant use, and, as explained above, the Court has already recognized that companies that sell goods internationally can comprise a "group," that there is no limitation on the size of a "group" in the statute, and that "Commerce defined the group consistent with the statute." Remand Order at 86-87, 93-95 (citing to the Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1 (1994) at 930).

III.     <u>Commerce Reasonably Explained The Discrepancy Between The Two Treasury Reports</u>

KTV alleges that Commerce's explanation as to the GOV's depreciation of the VND in the second half of 2019 is not supported by substantial evidence. KTV Remand Comments at 5-7. As an initial matter, KTV fails to explain why—even assuming the GOV did not intentionally depreciate the VND leading up to and during the holiday season in the United States in order to make Vietnamese goods cheaper—this should matter. The key issue here is not *why* there was a sharp increase in foreign exchange purchases, but whether Commerce sufficiently explained the reason for the discrepancy between the Treasury Report and the KTV Treasury Report—which it did.

Commerce fully complied with the remand order by providing further explanation, supported by the record, regarding the discrepancy in net purchases in foreign exchange that existed between the two reports. First, Commerce pointed out that the Treasury Report covered the period of investigation (calendar year 2019), while the KTV Treasury Report covered July 2018-June 2019, and that the GOV's foreign exchange purchases were higher in 2019 than in 2018. Remand Results at 21-22. Commerce then noted that, while neither the GOV nor KTV demonstrated why any time period outside the period of investigation should matter, the difference in time periods between the reports supported Commerce's finding that the majority of the GOV's foreign exchange purchases during the period of investigation occurred in the

second half of 2019, a period not covered by the KTV Treasury Report. *Id.* at 22. Thus, Commerce sufficiently demonstrated how "the six-month non-overlapping period could have accounted for the discrepancy" between the two reports. Remand Order at 136.

While Commerce did state that the increase in purchases was likely attributable to the GOV's efforts to depreciate the VND vis-à-vis the USD during the period leading up to and including the holiday season in the United States, Remand Results at 22, this finding was not crucial to Commerce's explanation as to why a discrepancy existed between the two reports. While KTV asserts that the GOV's management of the VND during the period of investigation was a response to market developments to stabilize the currency's value, the relevant inquiry, pursuant to the remand order, is whether Commerce sufficiently explained the reason for the discrepancy between the Treasury Report and the KTV Treasury Report in determining that the GOV's actions contributed to the undervaluation of the currency, not the reason behind those actions. *See* Remand Order at 136; *see also* 19 C.F.R. § 351.528(a)(2) (stating that Commerce "normally will make an affirmative finding under paragraph (a)(1) of this section only if there has been government action on the exchange rate that contributes to an undervaluation of the currency").

In any event, both the KTV Treasury Report and the Treasury Report confirm that the GOV significantly increased its foreign exchange purchases during 2019, depreciating the VND. *See* Remand Results at 20, 22 ("the GOV's actions on the exchange rate had the direct effect of undervaluing the VND vis-à-vis the USD by 4.7 percent") (citing P.R. 165 at 2) (emphasis removed); KTV Treasury Report at 37 (P.R. 202) (stating that, as "global financial conditions eased," the GOV "shifted to purchasing foreign exchange, with net purchases over the first half of 2019 modestly outweighing net foreign exchange sales over the prior six months).

Additionally, the 2019 IMF Balance of Payments table supports Treasury's findings, showing that Vietnam's foreign currency reserves increased nearly four times from 2018 to 2019 and that the GOV was increasing its foreign currency purchases in the latter half of 2019. *See id.* at 22, 26 (citing P.R.R. 5).

KTV cannot establish that Commerce failed to comply with the Court's remand order or that its explanation regarding the discrepancy was unreasonable or unsupported by substantial evidence. Thus, this Court should sustain.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's remand results and enter final judgment in favor of the United States.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

/s/Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

OF COUNSEL:
Paul Thornton
Attorney
U.S. Department of Commerce
Office of the Chief Counsel For Trade
Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (202) 329-3409
Email: paul.thornton@trade.gov

/s/Sosun Bae
SOSUN BAE
Senior Trial Counsel
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7568
Fax: (202) 514-8624
Email: sosun.bae@usdoj.gov

March 10, 2025

Attorneys for Defendant

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE

| | |
|---|---|
| KUMHO TIRE (VIETNAM) CO., LTD., | ) |
| Plaintiff, | ) |
| v. | ) Court No. 21-00397 |
| UNITED STATES, | ) |
| Defendant, | ) |
| and | ) |
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC MANUFACTURING, | ) |
| Defendant-Intervenors. | ) |

### ORDER

Upon consideration of the remand redetermination, the comments and responses filed by the parties, the administrative record, and all other pertinent papers, it is hereby

ORDERED, that the Department of Commerce's remand results are sustained in all respects, and it is further

ORDERED that judgment is entered on behalf of the United States.

Dated: _____, 2025          _____
New York, NY                                                                JUDGE