**UNITED STATES COURT OF INTERNATIONAL TRADE**
Before the Honorable Timothy M. Reif, Judge

| | |
|---|---|
| KUMHO TIRE (VIETNAM) CO., LTD., )<br>)<br>*Plaintiff,* )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>*Defendant,* )<br>)<br>and )<br>)<br>UNITED STEEL, PAPER AND )<br>FORESTRY, RUBBER, )<br>MANUFACTURING, ENERGY, ALLIED )<br>INDUSTRIAL AND SERVICE WORKERS )<br>INTERNATIONAL UNION AFL-CIO, )<br>CLC, )<br>)<br>*Defendant-Intervenor*. )<br>) | Court No. 21-00397 |

## DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S COMMENTS ON THE REMAND REDETERMINATION

Roger B. Schagrin
Elizabeth J. Drake
Saad Y. Chalchal*
SCHAGRIN ASSOCIATES
900 Seventh St. N.W., Suite 500
Washington, D.C. 20001
(202) 223-1700

*Counsel for United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC*

Date: March 10, 2025

* Only admitted in New York and New Jersey. Practice limited to matters before federal courts and agencies.

## DEFENDANT-INTERVENOR'S RESPONSE TO PLAINTIFF'S COMMENTS ON THE REMAND REDETERMINATION

Defendant-Intervenor the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC ("USW") respectfully submits this response to Plaintiff's comments on the remand redetermination filed by the U.S. Department of Commerce ("Commerce"). *See* ECF Nos. 91 and 95. The USW endorses and hereby adopts the response to Plaintiff's remand comments filed by Defendant, the United States. *See* ECF No. 98. The remand redetermination complies with the Court's remand order, is consistent with the statute, and is supported by substantial evidence. Thus, the USW respectfully requests that the determination be upheld.

Moreover, with respect to the issue of predominant use, there is no requirement that the predominant users of a subsidy be limited in number as Plaintiff seems to suggest. Instead, these are two alternative and distinct bases for a finding of *de facto* specificity. A specificity finding may be based on the fact that the group of enterprises that actually received the subsidy are limited in number. *See* 19 U.S.C. § 1677(5A)(D)(iii)(I). Alternatively, even if they are not limited in number, Commerce may find specificity on the basis that the group of enterprises at issue are the predominant users of the subsidy. *See* 19 U.S.C. § 1677(5A)(D)(iii)(II). Nor is there any requirement that the predominant users of the subsidy receive a disproportionate amount of the subsidy, as disproportionality is also its own separate basis for specificity. *See* 19 U.S.C. § 1677(5A)(D)(iii)(III). Simply put, the size of a group is not a relevant consideration when analyzing *de facto* specificity based on predominant use.

As Congress explained, these are separate and distinct inquiries, and a group that does not meet one criterion for specificity may nonetheless meet other criteria:

> … {W}here the number of enterprises or industries using a subsidy is not large, the first factor alone would justify a finding of specificity …. On the other hand, where the number of users of a subsidy is very large, the predominant use and disproportionality factors would have to be assessed. Because the weight accorded to the individual *de facto* specificity factors is likely to differ from case to case, clause (iii) makes clear that Commerce shall find *de facto* specificity if one or more of the factors exists.

Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1, at 931. Thus, Congress recognized that predominant use alone is sufficient to support a specificity finding even if the users are not limited in number but instead "very large," and even if their use of the subsidy is not disproportionate.

In addition, the likelihood of predominance does not always increase as the size of a group of enterprises or industries increases, as Plaintiff seems to suggest. We note that Commerce here did not define the group of enterprises based on its "size," but based on whether or not they are in the traded goods sector. In one country, the traded goods sector may be very large compared to other sectors such as services. In another country – such as an island nation that relies on tourism or a financial hub that relies on investment – the traded goods sector may not be large relative to other sources of foreign exchange. Thus, defining a group of enterprises as the traded goods sector does not always mean that the "size" of the sector is large. That will depend on the facts of each case.

Moreover, defining the group at issue as the traded goods sector does not result in a tautology. In order for the specificity analysis to be tautological, Commerce would have to define the "group" in a way that resulted in the "group" necessarily meeting the specificity criteria regardless of the facts of each case. In other words, if Commerce defined the "group" as the predominant users of the subsidy, there would always be specificity based on predominant use. That is not what Commerce did in this case. Instead, Commerce defined the "group" as the

traded goods sector and compared the dollars exchanged by the traded goods sector (the numerator) to all U.S. dollar inflows into Vietnam due to exports of goods, exports of services, investment, and income from abroad (the denominator). Because the traded goods sector accounted for 71.94 percent of those inflows, Commerce properly found that the sector was the predominant user of the currency undervaluation subsidy. As noted above, each economy is different. In Costa Rica or New Zealand, to take as hypothetical examples, tourism (the export of a service) and remittances (income from abroad), may account for more dollar inflows than net exports of goods, and the traded goods sector thus would not be the predominant user of any currency undervaluation program that either country may employ. In Vietnam, the traded goods sector was the predominant user, and Commerce's specificity determination was thus supported by substantial evidence and in accordance with law.

*     *     *

The USW appreciates this opportunity to respond to Plaintiff's comments on the remand redetermination. The USW respectfully requests that the Court sustain Commerce's remand redetermination in its entirety.

          Respectfully submitted,

          /s/ Elizabeth J. Drake
          Roger B. Schagrin
          Elizabeth J. Drake
          Saad Y. Chalchal*
          SCHAGRIN ASSOCIATES
          900 Seventh St. N.W., Suite 500
          Washington, D.C. 20001
          (202) 223-1700

          *Counsel for United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union AFL-CIO, CLC*

Date: March 10, 2025          * Only admitted in New York and New Jersey. Practice limited to matters before federal courts and agencies

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 853 words, including text, footnotes, and headings, according to the word count function of Microsoft Word used to prepare this brief.

/s/ Elizabeth J. Drake<br>
Elizabeth J. Drake

Dated: March 10, 2025